ELECTRONICALLY FILED
6/21/2011 12:01 PM
CV-2011-900858.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
JANE C. SMITH, CLERK

FILED
2011-Jun-24  PM 03:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE CIRCUIT COURT FOR MADISON COUNTY, ALABAMA

**Star Discount Pharmacy, Inc.,** an Alabama corporation;
**Propst Discount Drugs, Inc.,** an Alabama corporation;
**C&H Pharmacy, Inc.,** an Alabama corporation;
**Darden Heritage**, an individual;

Plaintiffs,

v.

**MedImpact Healthcare Systems, Inc.,** a California corporation;
**Michael Struhs**, an individual;
**Nicole Adams**, an individual;
Nos. 1-10, whether singular or plural, the individual(s) and/or entity(ies), who or which administered, created, funded, and/or authored, any plan that provided prescription pharmacy benefits to public education employees of the State of Alabama;
Nos. 11-20, whether singular or plural, the individual(s) and/or entity(ies) who or which created, administered, marketed, funded, and/or had any role in the network of pharmacies providing prescription pharmacy benefits to public education employees of the State of Alabama;
Nos. 21-30, whether singular or plural, the individual(s) and/or entity(ies), who or which designed, crafted, planned, authored, created, marketed, any plan to provide limited access to prescription pharmacy benefits within the State of Alabama;
Nos. 31-40, whether singular or plural, the individual(s) and/or entity(ies), known as and/or doing business as MedImpact, at all times material hereto;
Nos. 41-50, whether singular or plural, the individual(s) and/or entity(ies), who or which assisted and/or conspired with any named and/or fictitious defendants herein;
Nos. 51-60, whether singular or plural, the individual(s) and/or entity(ies), who or which is/are the predecessor(s), successor(s), alter ego(s), principal(s), agent(s), master(s), servant(s), employer(s), co-conspirator(s) and/or employee(s) of any named and/or fictitious defendants herein;

Defendants.

# COMPLAINT

## THE PARTIES

1.      The plaintiffs Star Discount Pharmacy, Inc., Propst Discount Drugs, Inc., and C&H Pharmacy, Inc., (hereinafter referred to as "Local Pharmacies") are Alabama corporations with their principal place of business in Madison County, Alabama.

2.      The plaintiff Darden Heritage (hereinafter "Heritage") is an individual resident citizen of Madison County, Alabama.  Heritage is a local, independent pharmacist who owns and operates the plaintiffs identified as Local Pharmacies.

3.      The plaintiffs bring this action on behalf of themselves and as the representatives of the class defined herein and which is a class of similarly situated individuals.

4.      The defendant MedImpact Healthcare Systems, Inc., (hereinafter "Medimpact") is a California company doing business at all times material hereto in Madison County, Alabama.

5.      Upon information and belief, the defendant Michael Struhs (hereinafter Struhs) is an adult resident citizen of the State of California.

6.      Upon information and belief, the defendant Nicole Adams (hereinafter "Adams") is an adult resident citizen of the State of Alabama.

7.      The fictitious defendants designated herein are presently unknown to plaintiffs or if known then their identity as proper party defendants is not known.  However, the proper parties will be substituted by amendment upon discovery.

8.      Any reference in this Complaint to any individual defendant, specific defendants, or defendants in general, refers to all defendants both named and fictitious.

## FACTS COMMON TO ALL ISSUES

9.      The plaintiffs named herein own and/or operate local, independent pharmacies within the State of Alabama.  These pharmacies are engaged in the business of providing pharmaceutical services and prescription medications to the public and are licensed under Alabama law to engage in this profession.

10.    The defendant MedImpact operates a business engaged in the administration of prescription drug benefit plans.

11.    The defendants Struhs and Adams are employees and/or agents of the defendant MedImpact.

12.    The Alabama legislature has provided for the creation and maintenance of health insurance benefits for individuals working in the field of public education in our State.  This plan has been in existence for many years and is commonly known as the "Alabama Public Education Employees' Health Insurance Plan" or PEEHIP.  The plan includes the provision of prescription medication benefits to State employees in the field of public education.

13.    During the existence of PEEHIP, the plan would occasionally contract with private companies to administer certain aspects of the offered benefits, including the provision of prescription medications.

14.    Upon information and belief, prior to his association with the defendant MedImpact, the defendant Struhs was the Director of Business Development for Wal-Mart's Health and Wellness business unit.   During his association with this chain store, Struhs advocated the implementation of prescription drug networks that denied the provision of professional services by smaller and/or independent pharmacies, and moreover, limited pharmacy access by the end consumer.

15.    Upon information and belief, in 2010, the defendant Struhs became employed by the defendant MedImpact.  The defendant Struhs continued to formulate his plan to prohibit the provision of professional services by smaller and/or independent pharmacies.

16.    In close proximity to the defendant Struhs becoming employed by the defendant MedImpact, the defendant MedImpact entered into an agreement to serve as the third-party administrator (TPA) of PEEHIP's prescription medication program.

17.    Upon becoming the TPA of PEEHIP's prescription medication program, the defendant MedImpact entered into an agreement with the State of Alabama and, additionally, assigned its employee the defendant Nicole Adams to serve as liaison to officials of the State of Alabama.  As part of this assignment, defendant Adams maintains an office in the State of Alabama.  PEEHIP is the Defendant Adams' sole account assignment.

18.    As part of MedImpact's agreement with the State of Alabama the defendant expressly assumed a duty to comply with all Alabama law, including insurance

laws, applicable to the provision of prescription and/or pharmaceutical benefits in an employee benefit plan within our State.

19.     In addition to the preceding paragraph, the defendant MedImpact also expressly assumed the duty of administering prescription benefits to employees covered by PEEHIP.

20.     A health benefit plan, such as PEEHIP, may provide reimbursement for covered medical expenses directly to the beneficiary or, alternatively, the beneficiary may assign this right to the services provider such as a pharmacy. In such cases, the providing pharmacy would be reimbursed directly by the TPA.

21.     After entering into its TPA agreement with the State of Alabama and assuming duties including those expressed in the preceding paragraphs, the defendant MedImpact began directly contacting pharmacies and requesting that the pharmacies enter into specific contracts with MedImpact.

22.     Alabama law specifically prohibits any agreements between any plan administrator and a pharmacy that establishes reimbursement rates for pharmacies which are less than the usual and customary rates paid by consumers not covered by a third-party plan. This prohibition is codified in our statutes, including Ala.Code Sec. 34-23-115.

23.     Alabama law also expressly prohibits any employee benefit plan from preventing a covered beneficiary from going to the pharmacy of his or her choice. The statute also prohibits any effort to deny a licensed pharmacy or pharmacist the right to participate in the provision of prescription benefits under the plan. This Alabama statute is commonly referred to as the "any willing provider" law and is contained in Ala.Code Sec. 27-45-1, et.seq.

24.     In accordance with its scheme and/or plan to limit local, independent pharmacies within the State of Alabama from providing prescription benefits, the defendants engaged in a course of conduct designed to require independent pharmacies to either enter into agreements for reimbursement upon unfavorable, unlawful, and/or unprofitable terms or, in the alternative, to be denied any right of reimbursement related to the provision of prescription medications within the State of Alabama.

25.     The present plaintiffs have suffered substantial and irreparable financial losses as a result of the defendants' unlawful course of conduct. These losses include the loss of revenue and the loss of customers. Said losses will likely continue into the future.

26.     The defendants' actions are in concert with its illegal plan to deny independent pharmacies within Alabama, such as the plaintiffs, with access to the Alabama market and to design a closed and\or limited access pharmacy network within our State for prescription medications in violation of Alabama law.

## COUNT ONE
## NEGLIGENCE

27.     Plaintiffs reallege and readopt all the preceding allegations.

28.     The defendants had a duty to reimburse the plaintiffs for the provision of prescription medications to covered beneficiaries within the State of Alabama.

29.     The defendants had a duty to reimburse the plaintiffs for the provision of prescription medications to covered beneficiaries within the State of Alabama at the usual and customary rates to pharmacies within our State.

30.     The defendants had a duty to allow the plaintiffs to participate in the in-state network for the provision of prescription medications upon terms prescribed by Alabama law as well as payment terms prescribed by the State of Alabama.

31.     The defendants had a duty to act with transparency and fairness in the treatment of pharmacies within the State of Alabama.

32.     The defendants had a duty to comply with Alabama law in the reimbursement of pharmacies within our State, including, but not limited to, Alabama laws related to reimbursement rates and any willing providers of pharmaceutical services.

33.     The defendants had a duty to operate and/or administer a network of pharmacies that provided pharmaceutical services and prescription medications throughout the State of Alabama in compliance with any applicable laws, including, without limitation state laws applicable to insurers.

34.     The defendants possessed the aforementioned duties pursuant to Alabama law, the provisions of its agreements with the State of Alabama, and its express assumptions of said duties.

35.     The defendants breached said duties by failing and/or refusing to reimburse the plaintiffs for prescription benefits; by failing and/or refusing to allow the plaintiffs to participate in the in-state network of pharmacies upon terms required by Alabama law; by failing and/or refusing to provide usual and customary reimbursement rates; by affirmatively placing conditions upon the plaintiffs that

would have prevented them from customer relationships with other non-covered beneficiaries upon different terms; by actively placing conditions upon the plaintiffs that denied them the ability to participate in the provision of prescription benefits as allowed by Alabama law; and\or by failing and\or refusing to comply with any applicable law, including, without limitation, state laws applicable to insurers.

36.    As a proximate result of the defendants' negligent conduct, the plaintiffs suffered and will continue to suffer economic loss including lost revenues, lost profits, additional expenses, and the loss of customer relationships.

WHEREFORE, PREMISES CONSIDERED, plaintiffs request compensatory damages in an amount to be determined by struck jury, plus costs, fees, and any other available relief.

## COUNT TWO
## WANTONNESS

37.    Plaintiffs reallege and readopt all the preceding allegations.

38.    The defendants possessed the aforementioned duties.

39.    The defendants intentionally, wantonly, and/or recklessly, with complete disregard of Alabama law to the detriment of Plaintiffs and others similarity situated, breached said duties as set forth in the preceding paragraphs.

40.    As a proximate result of the defendants' intentional, wanton and/or reckless conduct, the plaintiffs suffered and will continue to suffer economic loss including lost revenues, lost profits, additional expenses, and the loss of customer relationships.

WHEREFORE, PREMISES CONSIDERED, plaintiffs request compensatory and punitive damages in an amount to be determined by struck jury, plus costs, fees, and any other available relief.

## COUNT THREE
## UNJUST ENRICHMENT

41.    Plaintiffs reallege and readopt all the preceding allegations.

42.    The defendants knowingly retained benefits by refusing to provide reimbursement to plaintiffs for the provision of prescription medications and/or by

providing reimbursement at rates below the usual and customary rates required by Alabama law. The defendants knowingly and wrongfully accepted the benefits of plaintiffs' provision of services.

43.    The plaintiffs have a reasonable expectation of compensation based on Alabama law. Plaintiffs pursue this claim individually and on behalf of all similarly situated pharmacies within the State of Alabama.

WHEREFORE, PREMISES CONSIDERED, plaintiffs request that this Court take jurisdiction of these claims and grant any and all available equitable relief, plus compensatory damages, costs, and any other available relief.

## COUNT FOUR
## INTENTIONAL INTERFERENCE WITH A BUSINESS RELATIONSHIP

44.    Plaintiffs reallege and readopt all the preceding allegations.

45.    At all times material hereto, the plaintiffs had business relationships with customers of their pharmacies.

46.    The plaintiffs developed these valuable and long-term relationships through considerable efforts and valuable service.

47.    The defendants knew that plaintiffs had developed these business relationships with their customers.

48.    The defendants had knowledge of plaintiffs' business relationships, as well as knowledge of Alabama law which allowed these customers to choose to utilize the plaintiffs' services without interference.

49.    The defendants intentionally and unlawfully interfered with the plaintiffs' business relationships. This interference included the defendants' refusal to provide reimbursement to either the plaintiffs or their customers directly as well as the defendants' refusal to honor the choice of these customers to utilize plaintiffs' services as a willing pharmacy provider. This intentional interference also included the defendants' interjection of mandatory contractual terms concerning the reimbursement rates which would be paid to the plaintiffs and other independent pharmacies. This intentional interference also included the Defendants explicitly directing the Plaintiffs' customers to fill their prescription medications elsewhere.

WHEREFORE, PREMISES CONSIDERED, plaintiffs request compensatory and punitive damages in an amount to be determined by struck jury, plus costs, fees, and any other available relief.

## COUNT FIVE
## CIVIL CLAIM UNDER THE
## RACKATEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)
## (For all Class Members)

50.     Plaintiffs reallege and readopt all the preceding allegations.

51.     At all times material hereto, the defendants were engaged in a scheme to create a closed and\or limited access network of pharmacies in contravention of Alabama law, in restraint of trade, and in an effort to control the provision of pharmaceutical services and prescription medications to the beneficiaries of an employee benefit plan in our State.

52.     The defendant's scheme was developed and articulated over a period of time prior to the activities at issue which subsequently damaged the plaintiffs and other similarly situated pharmacies throughout Alabama.

53.     Upon information and belief, the defendant Struhs began developing his plan and/or scheme while serving as an officer of a large chain retailer of prescription medications.

54.     Upon beginning his employment with the defendant MedImpact, Struhs placed his plan in action within the State of Alabama.

55.     During the relevant period, the defendants MedImpact and Struhs retained the defendant Adams and had her placed in an office within the Retirement Systems of Alabama where she could serve to influence officials with responsibilities for the benefits plan at issue.  The Defendant Adams' sole account assignment was PEEHIP.

56.     During the relevant time period, the defendants engaged in a plan to influence certain public officials to deny the application of laws passed by our legislature and applicable to pharmacies, including laws that require reimbursement at usual and customary rates, laws that allow any willing pharmacy to participate in the provision of covered benefits, and laws that allow plan beneficiaries to select the pharmacy of his or her choice.

57.     Prior to his employment with the defendant MedImpact, the defendant Struhs acknowledged that his plan and/or scheme to limit access to pharmaceutical services and prescription medications would not work in a state with an "any willing provider" statute such as Alabama. Thus, the placement of defendant Adams within the offices of our State and the defendants' actions in concert with certain public officials to ignore these statutes were essential to the defendants' efforts to limit access to pharmaceutical services and prescription medications.

58.     During the relevant time period, certain officials with the State of Alabama began denying the applicability of Alabama's insurance laws such as the "any willing provider" statute despite expressing in writing shortly before this that said statute would be honored.

59.     Thereafter, the defendants furthered their scheme by beginning to propose written contracts to pharmacies within the State of Alabama to join its network for PEEHIP.

60.     The provision of a simple contract to in-state pharmacies so that they may join the network and receive direct reimbursement instead of the customer submitting reimbursement information is not, in itself, an issue. Rather, in an effort to further their scheme, the defendants included mandatory terms in said proposed pharmacy network agreements that were not the same as the reimbursement rates indicated by the State of Alabama, were not usual and customary reimbursement rates, were not equitable or equal reimbursement rates between independent pharmacies in Alabama and large chain pharmacies, required the independent pharmacies to accept reimbursement at unprofitable rates, required the independent pharmacies to receive reimbursement at the lowest rate provided to any of their customers, and required the Plaintiffs and others similarly situated to warrant that the pharmacy network agreement complied with all applicable laws. However, to further the scheme, the agreement placed no such requirement upon the Defendants.

61.     The pharmacy network agreement was designed to discourage and prevent independent pharmacies from entering the market and/or providing benefits to covered beneficiaries.

62.     In accordance with the defendants' unlawful plan and/or scheme, the proposed pharmacy network agreement treats independent pharmacies inequitably and unfairly and operates to the exclusive benefit of the desired large chains.

63.     Despite the representations in their marketing material of transparency, the defendants have refused to provide paid claims data for PEEHIP.

64.     At all times material hereto, the defendants proposed and required execution of their illegal and oppressive pharmacy network agreement as a condition to any reimbursement for the provision of covered pharmaceutical services and prescription medications.

65.     When the plaintiffs did not execute the required pharmaceutical network agreement, the defendants refused to reimburse customers directly at any rate. Moreover, the defendants sent correspondence to the plaintiffs purporting to be a letter that the defendants proposed sending to customers of the plaintiffs directing that those customers contact the defendants to get the names of other pharmacies.

66.     The defendants' plan and/or scheme has resulted in severe economic damages to the plaintiffs and other similarly situated independent pharmacies in Alabama. Additionally, the concerted actions of the defendants along with complicit officials has resulted, and/or will result, in a closed and\or limited access network of pharmacies detrimental to covered beneficiaries in the field of public education within our State. The closed and\or limited access network will result in less access to necessary medications; less access to competent pharmacists; greater distances of travel to get medications, especially in rural areas; and potential problems with the delivery of medications within our State. As a reference, many rural communities have numerous covered employees but only a local independent pharmacy. As an additional reference, times of natural disaster could result in a complete shutdown of the network as it did in Huntsville recently during a multi-day power outage where the plaintiffs were the only local pharmacy believed to have remained open for business.

67.     Plaintiffs seek relief under 18 U.S.C. Sec. 1964(a) of RICO and seek to recover actual and treble damages against the defendants for violations of 18 U.S.C. Sec. 1962(c), for a conspiracy to violate 18 U.S.C. Sec 1962(a) and (c) in violation of 18 U.S.C. Sec. 1962(d), and for seeking to aid and abet and aiding and abetting violations of 18 U.S.C. Sec. 1962(a) and (c) within the meaning of 18 U.S.C. Sec. 2.

68.     The plaintiffs and each member of the Class that the plaintiffs represent are "persons" within the meaning of 18 U.S.C. Sec. 1964(c).

69.     At all times material hereto, the plaintiffs, the class members, and the defendants were "persons" within the meaning of 18 U.S.C. 1961(3).

70.     With respect to the activities alleged herein, each defendant acted at all times with malice toward plaintiffs and the class, intending to engage in the conduct complained of for the benefit of themselves and with knowledge that such conduct constituted unlawfulness. Such conduct was done knowingly and with

actionable wantonness and reckless disregard for the rights of the plaintiffs and the class as well as in disregard of the Defendants' contractual obligations under PEEHIP and for the laws to which the defendants were subject.

71.     With respect to the activities alleged herein, the respective employee benefit plan, officials of the State of Alabama, and others not named as defendants in this complaint aided and abetted the defendants in committing these activities, within the meaning of 18 U.S.C. Sec. 2, by seeking to aid and abet and aiding and abetting a scheme to violate 18 U.S.C. Secs. 1962(a) and (c).  Each defendant and some or all of the co-conspirators also agreed to the operation of the scheme or artifice to defraud and to obtain money by false pretenses and to the scheme or artifice to deprive the plaintiffs and members of the class of the right to deliver pharmaceutical services for profit within the State of Alabama.  In furtherance of these agreements, the defendants agreed with certain officials of the respective employee benefit plan and others to interfere with, obstruct, and/or affect commerce by attempting to obtain and/or actually obtaining property interests to which the defendants were not entitled through the exploitation of the class member's fear of economic loss and/or loss of business.

72.     With respect to the overt acts and activities alleged herein, each defendant conspired with persons not named as defendants in the complaint, to violate U.S.C. Secs. 1962(a) and (c), all in violation of 18 U.S.C. Sec. 1962(d).  Each defendant also conspired with the other defendants to participate, directly or indirectly, in the fraudulent scheme or artifice alleged herein, to obtain money by false pretenses, and to deprive the plaintiffs and class members of valuable business interests.  Each defendant also agreed and conspired with the others to interfere, obstruct, delay, and/or affect commerce by attempting to obtain and/or actually obtaining property interests to which the defendants were not entitled through the exploitation of fear of economic loss and/or loss of business.

73.     The numerous predicate acts of mail and wire fraud, interference with the operation of employee benefit plans, and/or extortion, were part of each defendant's common fraudulent and extortionate scheme that was designed to:

        A.     Defraud and/or deprive the plaintiffs and class members of money and property interests under false pretenses;
        B.     Deprive the plaintiffs and class members of the ability to provide lawful pharmaceutical services through the pharmacy-patient relationship;
        C.     Deprive the plaintiffs and the class members of the ability to provide prescription medications contrary to the defendants' actual obligations an administrator of PEEHIP under Alabama law.

74.     The plaintiffs and other class members, as victims of the unlawful pattern of illegal activity, suffered losses as a result of these actions.

75.     To accomplish their illegal goal and/or scheme, the defendants have engaged in "racketeering activity" as defined in 18 U.S.C. Sec. 1961(1) to include wrongful conduct under Title 18, United States Code, involving Sec. 1341 (relating to mail fraud), Sec. 1343 (related to wire fraud), and Sec. 1951 (relating to extortion).

76.     The defendants violated 18 U.S.C. Secs. 1341, 1343, and 1346.  For the purposes of executing and/or attempting to execute their scheme to defraud and to obtain money by means of false or fraudulent pretenses, representations, or promises, as well as to execute and/or attempt to execute their scheme or artifice to deprive another of the tangible right of honest services, the defendants violated 18 U.S.C. Sec. 1341, 1343, and 1346, by placing in post offices, matters and things sent for delivery by the Postal Service and received matters and things therefrom and knowingly caused to be delivered by mail those matters and things according to the directions thereon or at the place at which they were directed to be delivered by the persons to whom they were addressed.  Additionally, the defendants transmitted in interstate commerce wire and other transmissions.

77.     The aforementioned transmissions contained such matters as the defendants' illegal and oppressive proposed pharmacy network agreement, the defendants' threats against the plaintiff as well as its customers to wrongfully withhold reimbursement, the defendants' illegal pharmacy network agreement language attempting to restrain plaintiffs' ability to serve non-PEEHIP covered customers through price discrimination clauses, monetary payments/ reimbursements contrary to the legal amount required in Alabama, and other communications.

78.     With respect to their unlawful activities described above, the defendants transmitted contracts, funds, correspondence, and other forms of business communications in a continuous and uninterrupted flow across state lines and employed the United States mail and interstate wires in violations of 18 U.S.C. Secs. 1341, 1343, and 1346.

79.     The defendants intentionally and knowingly made the material misrepresentations to the plaintiffs and members of the class for the purpose of deceiving them and thereby obtaining financial gain for themselves and other preferred pharmacies.  The plaintiffs and the class reasonably relied on the misrepresentations and omissions.

80.     The plaintiffs and class members were forced to elect between foregoing reimbursement and/or receiving reimbursement at improper rates. As a result, plaintiffs and class members were deprived of their legal right of honest services and reimbursement as a result of the defendants' conduct. Moreover, the defendants' wrongful activities produced harm to PEEHIP's beneficiaries by resulting in a loss of services and\or limited access to pharmaceutical services.

81.     The plaintiffs and class members were injured in their business or property by the defendants' overt acts and racketeering activities in amounts to be determined at trial.

82.     <u>The defendants violated 18 U.S.C. Sec. 1951(b)(2).</u>  During the relevant times herein alleged, and in furtherance of and for the purpose of executing and/or attempting to execute the above discussed scheme and artifice to defraud and/or deprive plaintiffs and class members, the defendants, aided and abetted by co-conspirators and others not named in the complaint, conspired to and attempted to and did interfere with, obstruct, delay, or affect "commerce" as the term is defined in 18 U.S.C. Sec. 1951 and by "extortion" as defined in 18 U.S.C. Sec. 1951(b)(2). The defendants unlawfully attempted to and/or induced numerous pharmacies to part with property interests to which the defendants were not unlawfully entitled. These interests included the right of pharmacies to receive usual and customary rates of reimbursement and to serve PEEHIP beneficiaries under the plan.

83.     The defendants either knew or recklessly disregarded that the natural consequences of their actions and words was and continues to be to exploit fear of economic loss or loss of business to attempt to and to interfere with and secure property rights to which they are not entitled.

84.     The defendants acts included all the acts previously set forth in earlier averments. Moreover, in a further effort to incite economic fear the defendants actually sent letters to the plaintiffs containing the names and addresses of plaintiffs' customers which clearly purported to tell those customers to seek out another pharmacy for their prescriptions and listing a website to help in that process. Defendants threatened to send these letters to plaintiffs' customers if plaintiffs did not accept the defendants' proposed pharmacy network agreement. Moreover, the defendants hired the defendant Adams and placed her within the offices of the Retirement Systems of Alabama, an agency which should be transparent and open to plaintiffs and PEEHIP beneficiaries.

85.     As stated previously, the plaintiffs and class members were injured in their business or property by the defendants' overt acts and racketeering activities in amounts to be determined at trial.

86.     The defendants violated 18 U.S.C. Sec. 1952(a).  During the relevant times herein alleged, and in furtherance of and for the purpose of executing and/or attempting to execute their illegal scheme and/or plan to violate Alabama law and deny the plaintiffs and class members their economic opportunities, the defendants traveled and/or used the mail in interstate commerce in order to carry on their plan, distribute the proceeds of their plan, and/or facilitate their unlawful activity.

87.     The plaintiffs and class members were injured in their business or property by the defendants' overt acts, as previously described, and racketeering activities in amounts to be determined at trial.

88.     The defendants have committed the aforementioned prohibited activities and have engaged in a "pattern of racketeering activity" as defined in Sec. 1961(5) of RICO, by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years.  Each such act was related, had a similar purpose, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including the plaintiffs and class members.

89.     This claim for relief arises under 18 U.S.C. Sec. 1964(c) of RICO and seeks to recover actual and treble damages for each defendants' violations of 18 U.S.C. Sec. 1962(c) and their violations of 18 U.S.C. Sec. 1962(d) by conspiring to violate 18 U.S.C. 1962(a) and (c).

90.     The persons with respect to these claims are the defendant MedImpact, defendant Struhs, defendant Adams, and others.  The enterprise for each claim is an association in fact consisting of those respective persons and others.

91.     The respective defendants were associated with the respective enterprise as described above and conducted and participated in the conduct of the affairs of that enterprise through the pattern of racketeering activity described herein.

92.     The plaintiffs and class members were directly and proximately injured both by this pattern of activity and by the respective defendants' conduct and participation, for which they are entitled to actual and treble damages, attorneys' fees, and costs under 18 U.S.C. Sec. 1964(c).

        WHEREFORE, PREMISES CONSIDERED, plaintiffs, on behalf of themselves and the class members, request all available damages as well as any other available relief to be determined by struck jury.

## COUNT SIX
## VIOLATION OF ALABAMA'S ANTITRUST LAWS

93.     Plaintiffs reallege and readopt all the preceding allegations.

94.     Alabama law prohibits persons and/or corporations from acting, agreeing, engaging, operating, and/or combining to fix or limit the quantity of any article or commodity sold within the State of Alabama.  These prohibitions are contained in several sections of Alabama's Code, including, those sections at Ala.Code Secs. 6-5-60 and 8-10-1, et seq..

95.     In the case at bar, the defendants created, devised, and implemented, a plan and/or scheme to limit the provision of pharmaceutical services and prescription medications within the State of Alabama.  The defendants' plan and/or scheme does not involve the manufacture of medications or their shipments across state lines.  Rather, it involves the retail provision of prescription medications within the State of Alabama by pharmacies operating at locations within the State of Alabama to citizens of the State of Alabama.

96.     While the defendants' conduct constitutes interstate commerce as determined for the application of RICO as set forth in the preceding averments, the actual trade restraint occurs solely within the borders of Alabama.

97.     The plaintiffs suffered damages and will continue to suffer damages in the future as a result of the defendants' unlawful activities to limit the provision of a service or a commodity within the State of Alabama, namely the intrastate provision of prescription medications and pharmaceutical services.

        WHEREFORE, PREMISES CONSIDERED, plaintiffs request compensatory and punitive damages in an amount to be determined by struck jury, plus costs, fees, and any other available relief.


## COUNT SEVEN
## CLASS CLAIMS

98.     Plaintiffs bring this action on behalf of themselves and all others similarly situated, who are members of the following class:

        All licensed pharmacies within the State of Alabama

99.    Plaintiffs claims are made on behalf of themselves and all others similarly situated under Alabama's Rules of Civil Procedure.

100.    On information and belief, the class consists of numerous pharmacies throughout Alabama injured and/or damaged by defendants' conduct, making joinder impracticable.

101.    The claims of the representative plaintiffs are typical of the claims of the class in that the representative plaintiffs have suffered adverse effects proximately caused by the defendants and their wrongful conduct.

102.    Furthermore, the factual bases of defendants' misconduct are common to all class members and represent a common thread of misconduct resulting in injury to all members of the class.

103.    Plaintiffs will fairly and adequately represent and protect the interests of the class.  Plaintiffs have retained counsel with experience in prosecuting business and complex cases.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the class and have the financial resources to do so.  Neither plaintiffs nor their counsel have interests adverse to those of the class.

104.    There is a well-defined community of interest in that the questions of law and fact common to the class predominate over questions affecting only individual class members.

105.    Absent class treatment, plaintiffs and class members will continue to suffer harm and damages as a result of defendants' unlawful and wrongful conduct.

106.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Without a class action, individual class members would face burdensome litigation expenses, deterring them from bringing suit or adequately protecting their rights.  Absent a class action, class members would continue to incur harm without remedy.

107.    The consideration of common questions of fact and law will conserve judicial resources and promote a fair and consistent resolution of these claims.

WHEREFORE, premises considered, Plaintiffs and the Class Members demand judgment against Defendants, jointly and severally, as follows:

A.    An order certifying the Class as set forth herein, appointing Plaintiffs

as Class Representatives, and appointing undersigned counsel as counsel for the Class;

      B.     Economic and compensatory damages in the amount to be determined at trial;

      C.     Punitive damages;

      D.     Pre-judgment and post-judgment interest at the maximum rate allowable by law;

      E.     Attorneys' fees and costs; and

      F.     Such other and further relief available under all applicable laws and any relief the Court deems just and appropriate.

Jeffrey G. Blackwell
Attorney for the Plaintiff's

Of Counsel:
Hornsby, Watson, Hornsby & Blackwell
1110 Gleneagles Drive
Huntsville, AL 35801
Ph: (256) 650-5500
Fax: (256) 650-5504
Email: jblackwell@hornsbywatson.com

_William B. Tatum_
William B. Tatum
Attorney for Plaintiff's

Of Counsel:
Lanier, Ford, Shaver & Payne P.C.
2101 Clinton Ave W. Ste 102
Huntsville, AL 35804
Ph: (256) 535-1100
Fax: (256) 533-9322
Email: wbt@lanierford.com

## JURY DEMAND

Plaintiffs demand a trial by struck jury on all available issues and counts.

Of Counsel:
Hornsby, Watson, Hornsby & Blackwell
1110 Gleneagles Drive
Huntsville, AL 35801
Ph: (256) 650-5500
Fax: (256) 650-5504
Email: jblackwell@hornsbywatson.com

ELECTRONICALLY FILED
6/9/2011 12:01 PM
CV-2011-900658.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
JANE C. SMITH, CLERK

# IN THE CIRCUIT COURT FOR MADISON COUNTY, ALABAMA

**Star Discount Pharmacy, Inc.,** an Alabama corporation;
**Propst Discount Drugs, Inc.,** an Alabama corporation;
**C&H Pharmacy, Inc.,** an Alabama corporation;
**Darden Heritage**, an individual;

Plaintiffs,

v.

**MedImpact Healthcare Systems, Inc.,** a California corporation;
**Michael Struhs**, an individual;
**Nicole Adams**, an individual;
Nos. 1-10, whether singular or plural, the individual(s) and/or entity(ies), who or which administered, created, funded, and/or authored, any plan that provided prescription pharmacy benefits to public education employees of the State of Alabama;
Nos. 11-20, whether singular or plural, the individual(s) and/or entity(ies) who or which created, administered, marketed, funded, and/or had any role in the network of pharmacies providing prescription pharmacy benefits to public education employees of the State of Alabama;
Nos. 21-30, whether singular or plural, the individual(s) and/or entity(ies), who or which designed, crafted, planned, authored, created, marketed, any plan to provide limited access to prescription pharmacy benefits within the State of Alabama;
Nos. 31-40, whether singular or plural, the individual(s) and/or entity(ies), known as and/or doing business as MedImpact, at all times material hereto;
Nos. 41-50, whether singular or plural, the individual(s) and/or entity(ies), who or which assisted and/or conspired with any named and/or fictitious defendants herein;
Nos. 51-60, whether singular or plural, the individual(s) and/or entity(ies), who or which is/are the predecessor(s), successor(s), alter ego(s), principal(s), agent(s), master(s), servant(s), employer(s), co-conspirator(s) and/or employee(s) of any named and/or fictitious defendants herein;

Defendants.

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCMENTS AND INTERROGATORIES TO NICOLE ADAMS

COME NOW the Plaintiffs, pursuant to the Alabama Rules of Civil Procedure, and request that the Defendant Nicole Adams respond to the following discovery within the time provided by applicable rule:

## DEFINITIONS

In responding to this discovery, the following definitions shall apply:

A.     As used herein, the words "document" or "documents" are defined to include any and all manner of written, typed, printed, reproduced, filmed or recorded material, and all photographs, pictures, plans, drawings, or other representations of any kind of anything pertaining, describing, referring or relating, directly or indirectly in whole or in part, to the subject matter of each Interrogatory and/or Request for Production of Documents, and the terms include, but without limitation:

1.     papers, books, journals, ledgers, statements, memoranda, reports, invoices, worksheets, work papers, notes, transcription of notes, letters, correspondence, abstracts, diagrams, plans, blueprints, specifications, pictures, drawings, films, photographs, graphic representations, illustrations, diaries, calendars, desk calendars, lists, logs, publications, advertisements, instructions, minutes, orders, messages, resumes, summaries, agreements, contracts, telegrams, telexes, cables, recordings, electronic mail, e-mail, email, electronically stored information, text messages, voice mail messages, instant messages, facsimiles, audio tapes, transactions of tapes or recordings, or any other writings or tangible things in which any forms of communication are recorded or reproduced, as well as all notations on the foregoing; and

2.     original and all other copies not absolutely identical; and

3.     all drafts and notes (whether typed or handwritten or otherwise) made or prepared in connection with each such document, whether used or not.

B.     As used herein, the term "identify," when used with reference to a document or documents, means to state for each such document:

1.     its nature, e.g., letter, memorandum, photograph, etc.;

2.     its title or designation;

3.     the date it bears;

4.      the name, title, business affiliation and business address of all persons by whom the document was prepared, in whole or part;

5.      the name, title business, affiliation and business address of all person to whom the document was directed, or copied, or sent;

6.      the statement of the subject and substance of the document;

7.      a precise description of the place where such document is presently kept, including (i) the title or the description of the file on which such document would be found; and (ii) the exact location of such file;

8.      the name, title, business affiliation of each person who presently has custody of such documents; and

9.      whether you claim any privilege as to such document and, if so, a precise statement of the facts upon which said claim of privilege is based.

C.      As used herein, the word "person" shall be deemed to mean, in the plural as well as in the singular, any natural person, corporation, partnership, company, firm, association, proprietorship, agency, board authority, commission, venture, or other such entity.

D.      As used herein, the phrase "identify each person" means to state for each such person:

1.      his or her name;
2.      his or her current business affiliation and title;
3.      his or her current business address, or if that is unknown, the last known business address; and
4.      the business affiliation, business address and the correct title of such person with respect to the business organization or entity with which he or she was associated.

E.      As used herein, the term "describe" when used in reference to an action, event or deed, means to state the date the event took place, the place the event occurred, the nature of the event, and to identify all persons involved in or witnessing the event.

F.      As used herein, the term "communication" means an inquiry, discussion, representation, conversation, negotiation, agreement, undertaking, meeting, telephone conversation, letter, note, telegram, telex, facsimile, electronic mail, e-mail, email, advertisement or other form of verbal intercourse, whether oral or written.

G.     As used herein, the term "representative" means any officer, director, shareholder, member, manager, partner, agent, employee, consultant, attorney, accountant or anyone else acting or purporting to act for, at the direction of, or on behalf of another.

H.     As used herein, the term "date" means the exact day, month and year, if ascertainable, or if not, a description of the temporal relationship of the occurrence for which the date is sought to the closest dates which are ascertainable.

I.     The term "or" shall be construed herein either conjunctively or disjunctively to bring within the scope of these Interrogatories and Requests for Production of Documents any information which might otherwise be construed to be outside their scope.

J.     As used herein, the term "you," "your" or "Defendant" shall refer to this Defendant.

K.     Electronically stored information produced in response to these Interrogatories and Requests for Production shall be produced in native format complete with any and all metadata.

### REQUEST FOR PRODUCTION

1. A complete copy of your resume and\or curriculum vitae.

2. Any and all communications to or from Defendant Struhs which relate in any way, to the defendant MedImpact Healthcare Systems, Inc.'s ("MedImpact") business in the State of Alabama.

3. Any and all communications to or from anyone which mention, note, and\or describe the "any willing provider" provisions of Alabama law.

4. Any and all paid claims data for Alabama

5. Any and all communications to or from any pharmacy within the State of Alabama which relate, in any way, to any concern, criticism, complaint, and\or objection, of any reimbursement rate and\or proposed or actual contract term.

6. Any documents which contain any cost projections related to your pharmacy network in Alabama as it now exists or might exist in the future.

7. Any and all agreements between you and the Defendant MedImpact.

8. Any and all documents which mention, note, and\or relate, in any way, to how your relationship with the Defendant MedImpact began.

9. Any and all correspondence, of any type, between you and Wal-Mart.

10. Any and all correspondence, of any type, between you and any pharmacy trade group, lobbying group, and\or professional association.

11. Any and all documents of any type, that mention, note, and\or reference any communications with any member of the Alabama legislature (and\or representative thereof) where said communication(s) involved any of the following: PEEHIP, Alabama's pharmacy laws, Alabama insurance laws, legislative proposals affecting PEEHIP, MedImpact, paid claims data, and\or the Retirement System of Alabama.

12. Any and all documents of any type, that mention, note, and\or reference any communications with any employee and\or official of PEEHIP and\or the Retirement Systems of Alabama (and\or representative thereof) where said communication(s) involved any of the following: PEEHIP, Alabama's pharmacy laws, Alabama insurance laws, legislative proposals affecting PEEHIP, MedImpact, paid claims data, and\or the Retirement System of Alabama.

13. Any and all requests for proposals related to MedImpact's contract with the State of Alabama.

14. Any and all documents, of any type, which you received at any training, seminars, and\or educations sessions provided and\or paid for by the defendant MedImpact.

15. Any and all manuals, rules, guidelines, handbooks, claims manuals, and\or documents of any type, which provide any instructions concerning your employment with the defendant MedImpact.

16. Your complete job description.

17. Any and all documents which mention, notes, and\or describe any meetings with independent pharmacies within the State of Alabama.

18. Any and all documents which contain any communications between you and anyone else employed with MedImpact (at any time prior to the filing of this suit) which mention, note, and\or discuss, Alabama law, Alabama's "any willing provider" statute, whether a closed and\or limited access pharmacy network was legal in Alabama, and\or any potential and\or proposed changes in Alabama law.

19. Any and all documents which reference, mention, and\or note, any consultant related, in any way, to MedImpact's pharmacy network in Alabama.

20. Any and all documents which analyze, compare, review, and\or note, any cast comparisons between an open and\or limited access pharmacy network; and, the impact of such networks upon PEEHIP and\or beneficiaries

21. Any documents which mention, note, and\or concern, any communications with PEEHIP beneficiaries about limited pharmacy access, changes to plan administration under MedImpact, and\or available pharmacies.

22. Any documents which mention, calculate, and\or note how the offered reimbursement terms were calculated and\or determined for different pharmacies.

23. Any and all documents which mention, note, and\or describe, any expenses incurred by you on behalf of MedImpact, which relate to meals, gifts, and\or entertainment.

## INTERROGATORIES

1. Identify yourself completely by full name, current address, date of birth, and social security number.

2. Identify and list each and every employment position you have ever held, including, but not limited to, the full name of each employer, all positions held by you, the dates of employment, the names of your immediate supervisors, and reasons for leaving each position.

3. Describe, in detail, how you became employed with the defendant MedImpact, including, but not limited to, how you first learned of MedImpact, first learned of any position with MedImpact, who you interviewed with, and when you became employed with the company.

4. If you withheld any documents responsive to Plaintiffs' request for production pursuant to any objection and\or assertion of privilege, then separately, for each, state the date of creation, subject matter, title, the name of the documents author, the reason for its creation, and the identity of each person who has seen and\or received a copy.

5. Identify each current and\or former employee of MedImpact who has any supervisory duties over you, for each, describing in detail his or her portion, duties, title, and responsibilities.

6. Describe, in detail, each and every conversation you have had with anyone concerning the impact of Alabama's insurance laws upon MedImpact's pharmacy network.  Include,

in your response, the dates of each conversation, the identities of all individuals involved, and a complete description of each conversation's substance.

7. Describe, in detail, all of your job duties, and\or responsibilities for the defendant MedImpact.

Jeffrey G. Blackwell
Attorney for the Plaintiffs

Of Counsel:
Hornsby, Watson, Hornsby & Blackwell
1110 Gleneagles Drive
Huntsville, AL 35801
Ph: (256) 650-5500
Fax: (256) 650-5504
Email: jblackwell@hornsbywatson.com

| State of Alabama<br>Unified Judicial System<br><br>Form C-34   Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br><br>47-CV-2011-900658.00 |
|---|---|---|

## IN THE CIVIL COURT OF MADISON, ALABAMA
### STAR DISCOUNT PHARMACY, INC. ET AL V. MEDIMPACT HEALTHCARE SYSTEMS, IN

NICOLE C ADAMS, 294 TERI LANE, PRATVILLE, AL 36066

NOTICE TO _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY JEFFREY G. BLACKWELL MR.

WHOSE ADDRESS IS 1110 GLENEAGLES DRIVE, HUNTSVILLE, AL 35801 _____

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☑ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☐ Service by certified mail of this summons is initiated upon the written request of _____

pursuant to the Alabama Rules of the Civil Procedure

| 6/21/2011 12:01:05 PM | /s JANE C. SMITH | _____ |
|---|---|---|
| Date | Clerk/Register | By |

☐ Certified mail is hereby requested _____

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

_____          _____

Date          Server's Signature





Ret
6-14-11

RESTRICTED

RESTRICTED

RESTRICTED

RESTRICTED

FILED IN OFFICE

JUN 14 2011

JANE SMITH
Clerk, Circuit Court, Madi.Co., AL.





**2. Article Number**

7179 1000 1642 0218 9989

Reorder Form LCD-811 rev. 01/07
1-800-638-4800
www.printsecertifiedmail.com

**1. Article Addressed to:**

Nicole C. Adams
294 Teri Lane
Pratville, AL 36066

Code2: CV2011-900658  D002  S/C  Disc

**COMPLETE THIS SECTION ON DELIVERY**

**A. Signature**

X

☐ Agent
☐ Addressee

**B. Received by** (*Printed Name*)

**C. Date of Delivery**

**D. Is delivery address different from item 1?** ☐ Yes
If YES enter delivery address below:  ☐ No

**3. Service Type**    ☒ Certified

**4. Restricted Delivery?** (*Extra Fee*)   ☒ Yes

PS Form 3811            Domestic Return Receipt

**A. Signature**

☐ Agent
☐ Addressee

7179100016420218978L

**B. Received by** *(Printed Name)*

**C. Date of Delivery**
5/2/11

1. Article Addressed to:

**D. Is delivery address different from item 1?** ☐ Yes
If YES enter delivery address below: ☐ No

**MedImpact Healthcare Systems, Inc.**
**c/o CT Corporation System**
**2 North Jackson St. #605**
**Montgomery, AL 36104**

**3. Service Type** ☒ Certified

**4. Restricted Delivery?** *(Extra Fee)* ☐ Yes

Code2: CV2011-900658  D001  S/C  Disc

PS Form 3811                    **Domestic Return Receipt**

**COMPLETE THIS SECTION ON DELIVERY**

7179 1000 1642 0219 0077

**1. Article Addressed to:**

**Michael T Struhs**
**15895 Bromegrass CT.**
**Poway, CA 92064**

**A. Signature**

X _____  ☐ Agent
                           ☐ Addressee

**B. Received by** *(Printed Name)*   **C. Date of Delivery**

Michael T Struhs     5/28/11

**D. Is delivery address different from Item 1?** ☐ Yes
If YES enter delivery address below:   ☐ No

**3. Service Type**   ☒ Certified

**4. Restricted Delivery?** *(Extra Fee)*   ☒ Yes

Code2: CV2011-900658  D003  S/C  Disc

**PS Form 3811**               **Domestic Return Receipt**

State of Alabama
Unified Judicial System
Form C-34  Rev 6/88  ORIGINAL

**SUMMONS**
**- CIVIL -**

Case Number:
**47-CV-2011-900658.00**

IN THE CIVIL COURT OF MADISON, ALABAMA

**STAR DISCOUNT PHARMACY, INC. ET AL v. MEDIMPACT HEALTHCARE SYSTEMS, INC. ET AL**

D002

NOTICE TO   NICOLE C ADAMS, 204 TERI LANE, PRATTVILLE, AL 36066

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY JEFFREY G. BLACKWELL MR.

WHOSE ADDRESS IS 1110 GLENEAGLES DRIVE, HUNTSVILLE, AL 35801

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of   STAR DISCOUNT PHARMACY, INC.
   pursuant to the Alabama Rules of the Civil Procedure

| 5/24/2011 5:11:55 PM | /s JANE C. SMITH | CT |
|---|---|---|
| Date | Clerk/Register | By |

☑ Certified mail is hereby requested   /s JEFFREY G. BLACKWELL MR.

Plaintiff's/Attorney's Signature

| Article #:  71791000164202189989 |
| Date/Time:   5/26/2011  12:14:43PM |
| Code2: CV2011-900658  D002  S/C  Disc |
| Internal File #: |
| Internal Code #: |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County

_____                    _____
Date                              Server's Signature

**47-CV-2011-900658.00**
STAR DISCOUNT PHARMACY, INC. ET AL v. MEDIMPACT HEALTHCARE SYSTEMS, INC. ET AL

C001 - STAR DISCOUNT PHARMACY, INC.        v.   D002 - NICOLE C ADAMS

Plaintiff                                              Defendant



47-CV-2011-900658.00 D002

**SERVICE RETURN**

| State of Alabama<br>Unified Judicial System<br>Form C-34   Rev 6/88   ORIGINAL | SUMMONS<br>- CIVIL - | Case Number:<br>47-CV-2011-900658.00 |
| --- | --- | --- |

### IN THE CIVIL COURT OF MADISON, ALABAMA

### STAR DISCOUNT PHARMACY, INC. ET AL v. MEDIMPACT HEALTHCARE SYSTEMS, INC. ET AL

D001

**NOTICE TO**   MEDIMPACT HEALTHCARE SYSTEMS, INC. C/O CT CORPORATION SYSTEM 2 NORTH JACKSON ST. # 605, MONTGOMERY, AL 36104

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY JEFFREY G. BLACKWELL MR.

WHOSE ADDRESS IS 1110 GLENEAGLES DRIVE, HUNTSVILLE, AL 35801

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of   STAR DISCOUNT PHARMACY, INC.
   pursuant to the Alabama Rules of the Civil Procedure

| 5/24/2011 5:11:55 PM | /s JANE C. SMITH | CT |
| --- | --- | --- |
| Date | Clerk/Register | By |

| ☑ Certified mail is hereby requested | /s JEFFREY G. BLACKWELL MR. | Article #: 71791000164202189781<br>Date/Time:   5/26/2011 11:54:50AM |
| --- | --- | --- |
| | Plaintiff's/Attorney's Signature | Code2: CV2011-900658  D001   S/C  Disc<br><br>Internal File #:<br>Internal Code #: |

**RETURN ON SERVICE:**

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ In _____ Cou _____

_____

| Date | Server's Signature |
| --- | --- |

### 47-CV-2011-900658.00

### STAR DISCOUNT PHARMACY, INC. ET AL v. MEDIMPACT HEALTHCARE SYSTEMS, INC. ET AL

| C001 - STAR DISCOUNT PHARMACY, INC. | v. | D001 - MEDIMPACT HEALTHCARE SYSTEMS, INC. |
| --- | --- | --- |
| Plaintiff | | Defendant |



47-CV-2011-900658.00  D001

# SERVICE RETURN