FILED

2012 Mar-27  AM 10:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **STAR DISCOUNT PHARMACY, INC., et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **5:11-cv-2206-AKK** |
| | ) | |
| **MEDIMPACT HEALTHCARE SYSTEMS, INC., et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendants MedImpact Healthcare Systems, Inc. ("MedImpact"), Michael Struhs ("Struhs"), and Nicole Adams's ("Adams") (collectively, "Defendants") Motion to Dismiss, doc. 2, and Motion to Stay Discovery, doc.11. The motions are fully briefed.  Docs. 7 and 8.  For the reasons set forth below, the motion to dismiss is **GRANTED,** as it relates to the RICO section 1962(a) claim and the section 1962(d) conspiracy claim to violate section 1962(a), and **DENIED** in all other respects.  Furthermore, the court **MOOTS** the motion to stay.  **The parties are directed to meet and submit their Rule 26 Report of Planning Meeting by April 23, 2012.**

Part I of this opinion is a discussion of the dismissal standard.  In Part II, the

1

court outlines the facts that form the basis for this lawsuit.  Part III is the court's

analysis of the parties' respective contentions and it is divided into three subparts.

In subpart A, the court analyzes Plaintiffs' common law causes of action, in

subpart B, the court analyzes Plaintiffs' claim for violation of the Racketeer

Influence and Corrupt Organization Act, and in subpart C, the court analyzes

Plaintiffs' state antitrust claim.  Finally, Part IV is the court's conclusion.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a

short and plain statement of the claim showing that the pleader is entitled to

relief."  "[T]he pleading standard Rule 8 announces does not require 'detailed

factual allegations,' but it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, ---U.S.---, 129 S. Ct. 1937,

1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere

"labels and conclusions" or "a formulaic recitation of the elements of a cause of

action" are insufficient.  *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation

marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'"  *Id*., at 1949 (citing *Bell Atl. Corp.*, 550

U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a

complaint fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

## II. PROCEDURAL AND FACTUAL BACKGROUND[1]

In 2010, MedImpact signed an agreement with Alabama to serve as the third-party administrator ("TPA") of the Alabama Public Education Employees' Health Insurance Plan's ("PEEHIP") prescription medication program.  Doc. 1-1,

---

[1]"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009).

at 3 ¶¶ 10-11, 16. Defendants Adams and Struhs are employees of MedImpact and MedImpact assigned the PEEHIP account solely to Adams. *Id.*, at 3 ¶¶ 11, 17. Allegedly, MedImpact expressly assumed the responsibility of complying with Alabama insurance laws and administering prescription benefits to PEEHIP's covered employees. *Id.*, at ¶¶ 18-19.

PEEHIP offers health insurance and prescription medication benefits to Alabama public education employees and occasionally contracts with private companies to administer some of the prescription medication benefits. *Id.*, at 3 ¶¶ 12-13. PEEHIP provides reimbursement for covered medical expenses directly to the beneficiary or the beneficiary may assign the right to the service provider, such as a pharmacy, which is then reimbursed directly by the TPA. *Id.*, at 4 ¶ 20.

Plaintiffs own and operate private independent pharmacies. *Id.* Plaintiffs contend that after MedImpact entered into the TPA agreement, MedImpact contacted pharmacies directly and requested that the pharmacies enter into specific contracts with MedImpact. *Id.,* at 4 ¶ 21. Allegedly, Defendants tried to force Plaintiffs to agree to unfavorable reimbursement terms and threatened to prevent Plaintiffs from participating in the program if Plaintiffs refused. *Id.,* at 4 ¶ 24.

Specifically, Plaintiffs contend that, on behalf of MedImpact, Struhs "formulate[d] [a] plan to prohibit the provision of professional services by smaller

4

and/or independent pharmacies." Doc. 1-1, at ¶ 15. Allegedly, Struhs initiated the plan while working as the Director of Business Development for Wal-Mart's Health and Wellness business unit, where Struhs "advocated [for] the implementation of prescription drug networks that denied the provision of professional services by smaller and/or independent pharmacies, and moreover, limited pharmacy access by the end consumer."[2] *Id.*, at 3 ¶ 14. Supposedly, Struhs continued to implement his plan at MedImpact, in conjunction with Adams and certain Alabama officials. *Id.* Plaintiffs contend Defendants ultimately tried to limit or exclude Plaintiffs and other private independent pharmacies access to the pharmacy network in Alabama, *id.*, at 5 ¶¶ 26, 57, and that Plaintiffs have suffered "substantial and irreparable financial losses as a result of the defendants' unlawful course of conduct," *id.*, at 4 ¶ 25. Consequently, Plaintiffs filed this claim on behalf of themselves and as representatives of private independent pharmacies in Alabama.

### III. ANALYSIS

Plaintiffs raise six counts on behalf of themselves and the class they seek to represent: negligence (Count I); wantonness (Count II); unjust enrichment (Count III); intentional interference with a business relationship (Count IV); violation of

---

[2]Struhs worked at Wal-Mart prior to joining MedImpact in 2010.

5

Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count V); and violation of Alabama's antitrust laws (Count VI).  Doc. 1-1.  Defendants have moved to dismiss, alleging that these claims fail because (1) Defendants did not violate the state statutes at issue; (2) the state statutes do not provide for a private right of action; (3) Plaintiffs did not sufficiently plead their RICO claim, and the alleged predicate acts fail to satisfy *Twombly/Iqbal* and Rule 9(b) standards; and (4) the state-action doctrine bars Plaintiffs' antitrust claim, and that Alabama's antitrust statute does not apply to interstate commerce.  Doc. 3, at 4.  The court will address the common law claims (Counts I-IV) first, the RICO claim (Count V) second, and, finally, the antitrust claim (Count VI).

## A.    Plaintiffs' Common Law Causes of Actions – Counts I-IV

The issue of contention for the common law claims is centered on the underlying law supporting these claims.  Defendants contend that dismissal is warranted because Plaintiffs are pursuing their claims under Ala. Code sections 27-45-1, et seq.[3] and 34-23-115,[4] which do not provide a private right of action.

---

[3] Section 27-45-3 provides:

No health insurance policy or employee benefit plan which is delivered, renewed, issued for delivery, or otherwise contracted for in this state shall:

(1) Prevent any person who is a party to or beneficiary of any such health insurance policy or employee benefit plan from selecting the pharmacy or pharmacist of his choice to furnish the pharmaceutical services, including without

Doc. 3, at 6 & 14.  While Plaintiffs admit that no private right of action exists

under these statutes, they contend their common law claims are premised upon

contract law, i.e., Defendants' alleged breach of certain duties imposed on

Defendants by Alabama law, rather than on the statutes in question.  Doc. 7, at 5.

The parties rely on the same case, *Gilmer v. Crestview Mem'l Funeral

Homes,* 35 So. 3d 585, 591 (Ala. 2009), to support their respective contentions.  In

particular, Defendants claim *Gilmer* provides that "Alabama law is clear that

common law causes of actions predicated upon the violation of a statute cannot be

maintained where there is no private right of action under the statute itself."  Doc.

---

limitation, prescription drugs, offered by said policy or plan or interfere with said
selection provided the pharmacy or pharmacist is licensed to furnish such
pharmaceutical services in this state; or

(2) Deny any pharmacy or pharmacist the right to participate as a contracting
provider for such policy or plan provided the pharmacist is licensed to furnish
pharmaceutical services, including without limitation, prescription drugs offered
by said policy or plan.

ALA. CODE § 27-45-3 (1975).

[4]Section 34-23-115 provides:

No agreement between administrator and a pharmacy shall establish
reimbursement rates or procedures that result in reimbursement rates for services
rendered to persons covered by the plan which are less than the usual and
customary rates paid by consumers not covered by a third party plan for the same
or similar services.

ALA. CODE § 34-23-115 (1975).

7

3, at 14.  Plaintiffs disagree and counter that *Gilmer* provides that a claim can arise under separate grounds from a statute, "including a contract or other source." Doc. 7, at 6.

To resolve the conflicting interpretations of *Gilmer*, a brief summary is necessary.  In *Gilmer*, the defendants asked the court to dismiss Gilmer's claims because they purportedly arose solely from Gilmer's allegations that defendants violated an Alabama statute that does not create a private cause of action.  *Gilmer*, 35 So. 3d at 591.  Gilmer disagreed and asserted that her claims were premised on valid breach-of-contract common law causes of action, rather than the statute in question.  *Id.*, at 591, 594.  Moreover, Gilmer contended that she referenced the statute solely to help establish some of the elements of her common law claims. *Id.*  To resolve the issue, the Alabama Supreme Court stated it must "examine each of Gilmer's claims and decide whether each claim states a cause of action arising under [the statute], which . . . we assume does not provide Gilmer a private cause of action, or whether each claim states a common-law cause of action that is not dependant upon a private cause of action being conferred by [the statute]."  *Id.*, at 592.

In other words, *Gilmer* holds that a claim can proceed if it is not dependant on a private cause of action arising under a statute.  *Id.*, at 593.  Therefore, this

court must determine also whether Plaintiffs' common-law causes of actions are dependant upon a private cause of action conferred by Ala. Code sections 27-45-1, et seq. and 34-23-115, or whether Plaintiffs' claims exist independent of these two statutes.  As shown below, Plaintiffs have pled sufficient facts at this juncture to establish that their common law claims are not dependant on a private right of action conferred by the two statutes in question.

### 1.    Plaintiffs State a Claim for Negligence – Count I

In Count I, Plaintiffs plead a negligence claim and contend, in part, that "defendants had a duty to reimburse the plaintiffs for the provision of prescription medications to cover beneficiaries within the State of Alabama at the usual and customary rates to pharmacies within our State . . . . [and] [t]he defendants breached said duties by failing and/or refusing to reimburse the plaintiffs for prescription benefits . . . ."  Doc. 1-1, at 5 ¶¶ 29, 35 9.  Furthermore, Plaintiffs allege:

> Alabama law specifically prohibits any agreements between any plan administrator and a pharmacy that establishes reimbursements rates . . . less than the usual customary rates . . . . This prohibition is codified in . . . Ala. Code Sec. 34-23-115.  Alabama law also expressly prohibits any employee benefit plan from preventing a covered beneficiary from going to the pharmacy of his or her choice . . . and is contained in Ala. Code Sec. 27-45-1, et seq.

*Id.*, at 4 ¶¶ 22, 23.  To sustain a negligence claim, a plaintiff must show "(1) that

the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or injury; and (4) that the defendant's breach was the actual and proximate cause of the plaintiff's loss or injury." *Dibiasi v. Joe Wheeler Elec. Membership Corp.*, 988 So. 2d 454, 460 (Ala. 2008).

The issue of contention here is whether the duty arises under the two code sections, which provide no right to a private action, as Defendants allege, or under a right derived in contract. Based on its review of the Complaint, the court finds that Plaintiffs allege a claim that is derived from a right purportedly conferred by a contract. Specifically, Plaintiffs allege Defendants had "a duty to allow the plaintiffs to participate in the instate network for the provision of prescription medications upon terms prescribed by Alabama law as well *as payment terms prescribed by the State of Alabama.*" *Id.*, at 5 ¶¶ 30-34 (emphasis added). Moreover, "Plaintiffs also allege that the Defendants possessed these duties pursuant to not only Alabama law, but also (1) the provisions of its agreements with the State of Alabama, and (2) its express assumptions of said duties." Doc. 7, at 7; doc. 1-1, at 5 ¶ 34. Furthermore, Plaintiffs contend Defendants breached their duties, in part, by (1) failing to reimburse Plaintiffs for prescription benefits; (2) not allowing Plaintiffs to participate in the in-state network of pharmacies by terms required by Alabama law; (3) refusing to provide customary reimbursement

rates; (4) placing conditions upon Plaintiffs "that would have prevented them from customer relationships with other non-covered beneficiaries upon different terms;" and (5) failing to comply with state laws applicable to insurers.  Doc. 1-1, at 6 ¶ 35.   Therefore, as a result of Defendants' alleged negligence, Plaintiffs contend they have "suffered and will continue to suffer economic loss including lost revenues, lost profits, additional expenses, and the loss of customer relationships." *Id.*, at 6 ¶ 36.

Accepting these allegations as true, Plaintiffs provide enough factual matter to sustain a plausible cause of action for negligence that is not dependant upon a private cause of action conferred by Ala. Code sections 27-45-1, et seq. and 34-23-115.  Rather, the claim is based on an alleged failure by Defendants to comply with the payment plans purportedly prescribed by MedImpact's contract with Alabama as a condition to act as the TPA of the PEEHIP program.  Accordingly, the court **DENIES** the motion to dismiss Count I.

### 2. Plaintiffs State a Claim for Wantonness – Count II

In Count II, Plaintiffs plead a claim for wantonness, contending that Defendants "intentionally, wantonly, and/or recklessly, with complete disregard of Alabama law to the detriment of Plaintiffs and others similarly situated, breached

said duties . . . ,"[5] doc. 1-1, at 6 ¶ 39, and that as a proximate result, Plaintiffs

suffered and will continue to suffer economic loss, *id.*, at 6 ¶ 40.  As with the

negligence claim, Defendants contend that the wantonness claim derives solely

from Ala. Code sections 27-45-1, et seq. and 34-23-115 and, as such, assert that

Plaintiffs cannot maintain a private right cause of action.  The court disagrees

because although Plaintiffs state that Defendants violated "Alabama law,"

Plaintiffs also specifically contend that Defendants breached their duties stated

expressly in MedImpact's agreement with the State.  Doc. 1-1, at 5 ¶ 39.  In other

words, Defendants' alleged duties arise both under Alabama law and from

MedImpact's agreement with the State, through which it purportedly expressly

assumed these alleged duties.  Doc. 1-1, at 5 ¶ 34.  Where, as here, Plaintiffs allege

that Defendants "expressly assumed the duty of administering prescription

benefits to employees covered by PEEHIP," that Defendants breached that duty by

failing to comply with the provisions in Defendants' agreement with Alabama, *id.*,

at 4, 6 ¶¶ 19, 40, and that "[D]efendants' actions are in concert with its illegal plan

---

[5]Wantonness is "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."  *Bozeman v. Central Bank of the South*, 646 So. 2d. 601, 603 (Ala. 1994) (quoting *Stone v. Southland Nat'l Ins. Corp.*, 589 So. 2d 1289, 1292 (Ala. 1991)).  "[T]o prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff."  *Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998).

to deny independent pharmacies within Alabama . . . access to the Alabama market

. . . ," *id.*, at 5 ¶ 26, Plaintiffs plead sufficient facts to sustain a plausible cause of

action for wantonness and to survive a motion to dismiss.  Accordingly, the court

**DENIES** the motion to dismiss Count II.

### 3.    Plaintiffs State a Claim for Unjust Enrichment – Count III

In Count III, Plaintiffs allege a claim for unjust enrichment, contending that

Defendants "knowingly retained benefits by refusing to provide reimbursements to

[P]laintiffs for the provision of prescription medications and/or by providing

reimbursement at rates below the usual and customary rates required by Alabama

law.  The [D]efendants knowingly and wrongfully accepted the benefits of

[P]laintiffs' provision of services," in violation of Ala. Code sections 27-45-1, et

seq. and 34-23-115.  Doc. 1-1, at 6-7 ¶ 42.  Again, although Defendants are correct

that these two statutes do not provide a private right to action, Defendants

overlook Plaintiffs' contention that " [D]efendant[s] expressly assumed a duty to

comply with all Alabama law, including insurance laws, applicable to the

provision of prescription and/or pharmaceutical benefits in an employee benefit

plan within our State."  Doc. 1-1, at 3-4 ¶ 18.  Furthermore, Plaintiffs contend that

they have reasonable expectations for reimbursement because of Defendants'

expressed duty to pay Plaintiffs.  *Id.*, 5, 7 at ¶¶ 29, 34, 43.  In other words,

13

Plaintiffs seek relief for Defendants' alleged breach of MedImpact's agreement with the State, and thus, allegedly, Defendants' corresponding duty to Plaintiffs. In light of these contentions, the court finds also that Plaintiffs' pleadings provide sufficient factual matter to survive a motion to dismiss.  Accordingly, the court **DENIES** the motion to dismiss Count III.

### 4.    Plaintiffs State a Claim for Intentional Interference with a Business Relationship – Count IV

In Count IV, Plaintiffs contend Defendants intentionally and unlawfully interfered with Plaintiffs' business relationships by "refus[ing] to provide reimbursement to either the plaintiffs or their customers directly as well as the defendants' refusal to honor the choice of these customers to utilize the plaintiffs' services as a willing pharmacy provider."  Doc. 1-1, at 7 ¶ 49. Allegedly, the interference included "defendants' interjection of mandatory contractual terms concerning reimbursement rates, which would be paid to the plaintiffs and other independent pharmacies [and] [d]efendants explicitly directing the Plaintiffs' customers to fill their prescription medications elsewhere."  *Id.*

To maintain a claim for intentional interference with a business relationship, Plaintiffs must allege: "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a *stranger*; (4) with

14

which the defendant intentionally interfered; and (5) damage." *White Sands Group, L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009) (emphasis added). Defendants contend Plaintiffs cannot establish the requisite "stranger" element because the PEEHIP plan allowed Defendants to provide reimbursement for covered medical expenses directly to the beneficiary – i.e., Plaintiffs' customers. Doc. 3, at 16. Thus, allegedly, Defendants had a direct business relationships with Plaintiffs' customers and, as such, Plaintiffs cannot prove the customers were strangers to Defendants. *Id*. Plaintiffs disagree and contend Defendants misrepresented Plaintiffs' claim because Plaintiffs simply state "that a health plan (such as PEEHIP) *may* provide reimbursement directly to the beneficiary or the provider of services." Doc. 7, at 11 (emphasis in original). However, allegedly, "[a]lthough a generic health plan can provide reimbursement in either manner, Plaintiffs' Complaint proceeds to aver that . . . MedImpact refused instead to actually provide reimbursement directly to customers and further refused to deal with customers concerning their choice of pharmacy." *Id.*; doc. 1-1, at 7 ¶ 49. Therefore, since the customers are Plaintiffs', Plaintiffs allege Defendants were strangers to these customers.

The court agrees with Plaintiffs that they have pled sufficient facts to establish at this juncture the "stranger" element of the *prima facie* case.

Defendants' reliance on *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, to support their contention that "a plaintiff asserting a tortious-interference claim bears the burden of proving that the defendant is a "third party" or "stranger" to the contract or business relationship with which the defendant allegedly interfered," 875 So. 2d 1143, 1154 (Ala. 2003), overlooks that the *Waddell* court addressed the tortious-interference claim on application for rehearing and, as a result, applied a different standard, i.e., "whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution," *id.*, at 1151.  In contrast, here, to survive the motion to dismiss, the Complaint must only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949.  Accepting Plaintiffs' facts as true, Defendants did not have a business relationship with Plaintiffs' customers and refused to provide reimbursement to either Plaintiffs or to Plaintiffs' customers directly.  Thus, the court finds the Complaint contains sufficient facts to state a claim for intentional interference with a business relationship, and **DENIES** the motion to dismiss Count IV.

## B.    Plaintiffs State a Claim for Violation of the Racketeer Influenced and Corrupt Organization Act (RICO) – Count V

RICO prohibits certain conduct involved in a "pattern of racketeering

activity," and provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c).  Here, Plaintiffs plead violations of section 1962(a) (prohibits the investing of proceeds derived from a pattern of racketeering activity into an enterprise), section 1962(c) (prohibits the conducting of the affairs of an enterprise through a pattern of racketeering activity), and section 1962(d) (prohibits the conspiring to violate § 1962(a), (b), or (c)), based on alleged predicate acts of mail fraud, wire fraud, interference with the operation of employee benefit plans, and extortion.  Doc. 1-1, at 10 ¶ 67,  11 ¶ 73.  Before proceeding on these claims, the court must first ascertain whether Plaintiffs satisfy section 1964, which requires them to "prove, first, that § 1962 was violated; second, that they were injured in their business or property; and third, that the § 1962 violation caused the injury." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir. 1994).  If Plaintiffs can establish these threshold elements, they have standing to pursue their RICO claims.

     1.    *Standing - 18 U.S.C. § 1964(c)*

Section 1964(c) requires that "civil RICO claimants . . . show (1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation."  *Williams v. Mohawk Indus., Inc.*, 465 F.3d

1277, 1283 (11th Cir. 2006).  "The plaintiff only has standing if . . . he has been

injured in his business or property by the conduct constituting the violation."

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  Plaintiffs satisfied

both requirements.  First, as to the requisite injury to business or property,

Plaintiffs allege that "defendants intentionally and knowingly made the material

misrepresentations to the plaintiffs and members of the class for the purpose of

deceiving them and thereby obtaining financial gain for themselves and other

preferred pharmacies."  Doc. 1-1, at 12 ¶ 79.  This allegation is sufficient to

adequately plead an injury to a property interest.

Second, the "by reason of" requirement "implicates two concepts: (1) a

sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate

cause."  *Williams*, 465 F.3d at 1287 (citing *Trollinger v. Tyson Foods*, 370 F.3d

602 (6th Cir. 2004) ("RICO's civil-suit provision imposes two distinct but

overlapping limitations on claimants – standing and proximate cause.")).  As to

this requirement, Plaintiffs claim that Defendants' alleged overt acts and

racketeering activities injured Plaintiffs and class members in their business or

property.  Doc. 1-1, at 13 ¶ 81.  Allegedly, Plaintiffs and class members were

"directly and proximately *injured both by this pattern of activity and by the*

*respective defendants' conduct and participation . . . .*" *Id*., at 14 ¶ 92 (emphasis

added).  This allegation is sufficient to satisfy the direct-injury requirement.  *See Williams*, 465 F.3d at 1287.

Similarly, in considering the proximate-cause requirement, "the central question . . . is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  *See also Bryne v. Nezhat*, 261 F.3d 1075, 1110 (11th Cir. 2001) (holding that the "restrictive view of the proximate cause requirement means that a plaintiff has standing to sue only if his injury flowed directly from the commission of the predicate acts").  Plaintiffs satisfy this requirement because they maintain that Defendants' alleged predicate acts caused them to lose money and property, the ability to provide lawful pharmaceutical services through the pharmacy-patient relationship, and the ability to provide prescription medications.  *See* Doc. 1-1 ¶¶ 73-74.

Based on these allegations, Plaintiffs have sufficiently alleged a direct relationship between the alleged RICO violations (mail fraud, wire fraud, interference with the operation of employee benefit plans, and extortion) and their injuries (loss of money, property, and customers).  Accordingly, Plaintiffs have standing to pursue their RICO claims.  Consequently, the court now turns to Defendants' arguments regarding the merits of these claims.

2.      *18 U.S.C. § 1962(a)*

Defendants contend that Plaintiffs fail to adequately plead injury under

section 1962(a), doc. 3, at 36, which expressly prohibits:

> any person who has received any income derived . . . from a pattern of
> racketeering activity . . . to use or invest . . . any part of such income
> . . . in acquisition of any interest in, or the establishment or operation
> of, any enterprise which is engaged in, or the activities of which
> affect, interstate or foreign commerce.

18 U.S.C. § 1962(a).  In other words, to sufficiently maintain an action under

section 1962(a), the plaintiff must allege an injury resulting from the use or

investment of the racketeering proceeds, rather than "an injury resulting from the

underlying racketeering enterprise itself."  *Fuller v. Home Depot Servs, LLC,* 512

F. Supp. 2d. 1289, 1294 (N.D. Ga. 2007).  Furthermore, section 1962(a) does not

"'contemplate a channeling of profits' derived from racketeering acts 'back to

[the] RICO violator.'"  *Lockheed Martin Corp.  v. Boeing Co.,* 357 F. Supp. 2d at

1370-71 (quoting *Allstate Ins. Co. v. Seigel,* 312 F. Supp. 2d 260, 271 (D. Conn.

2004)).  Rather, under section 1962(a), a plaintiff must show an injury resulting

from the investment of the proceeds that is distinct from an injury resulting from

the racketeering activity.  *Id*.; *see also Ouaknine v. MacFarlane*, 897 F.2d 75, 83

(2d Cir. 1990) ("the essence of a violation of § 1962(a) is not commission of

predicate acts but investment of racketeering income").

The court agrees with Defendants that Plaintiffs fail to allege facts that indicate they suffered an injury from the reinvestment of racketeering income. Instead, Plaintiffs assert merely that "[P]laintiffs and class members were injured in their business or property by the [D]efendants' overt acts and racketeering activities," doc. 1-1, at 13 ¶ 81, and that "[P]laintiffs and class members were directly and proximately injured both by this pattern of activity and by the respective [D]efendants' conduct and participation," *id*., at 14 ¶ 92.   Significantly, Plaintiffs never allege an injury resulting from the use or investment of the racketeering proceeds.  Consequently, the court **GRANTS** Defendants' motion to dismiss the section 1962(a) claim for failure to state a claim.

3.      *18 U.S.C. § 1962(c)*

Section 1962(c) requires that a plaintiff prove that a defendant participated in an illegal enterprise "through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  "Racketeering activity" includes such predicate acts as mail and wire fraud, 18 U.S.C. § 1961(1), and which "occur[] when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *Pelletier v. Zweifel,* 921 F.2d 1465,

1498 (11th Cir.1991). To prove "a pattern of racketeering activity," a plaintiff

must show at least two racketeering predicate acts that are related, and that they

amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel.*

*Co.,* 492 U.S. 229, 240 (1989). Moreover, "[a] party alleging a RICO violation

may demonstrate continuity over a closed period by proving a series of related

predicates extending over a substantial period of time." *Id.* at 242 (citing

*American Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1290-91 (11th Cir. 2010)).

Furthermore, a plaintiff must allege that some kind of deceptive conduct occurred

in order to plead a RICO violation predicated on mail fraud. *American Dental*,

605 F.3d at 1292 (citing *Am. United Life Ins. Co. v. Martinez,* 480 F.3d 1043,

1065 (11th Cir.2007)). Finally, "[a] violation of § 1962(c) . . . requires (1)

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (internal citation

omitted); *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006).

These four requirements are generally treated as two – (1) conduct of an enterprise

and (2) pattern of racketeering activity.

    (a) Conduct of an Enterprise

       To state a claim under section 1962(c), Plaintiffs must establish facts

supporting the conduct of an enterprise and that enterprise's common goal. *See*

*United States v. Turkette*, 452 U.S. 576, 583 (1981); *Mohawk Indus.*, 465 F.3d at 1283.  "The 'enterprise' is not merely the 'pattern of racketeering activity;' it is an entity separate and apart from the pattern."  *Turkette*, 452 U.S. at 583.  "An enterprise 'includes an individual partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'"[6]  *Mohawk Indus.*, 465 F.3d at 1284 (quoting 18 U.S.C. § 1961(4)).  Typically, an "enterprise in subsection (c) [of section 1962] connotes generally the

---

[6]  "An association-in-fact enterprise requires the existence of an *entity*, 'an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit.'"  *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1273 (S.D. Fla. 2003) (emphasis in original) (quoting *Turkette*, 452 U.S. at 583).  Such a requirement ensures that "all RICO enterprises have a structure and some mechanism for controlling and directing the affairs of the enterprise."  *Id.* (internal quotation marks and citation omitted).  Indeed, a RICO enterprise "requires a certain amount of organizational structure . . . . [S]imply conspiring to commit fraud is not enough to trigger the Act if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes."  *Id.* (internal citation omitted).  Additionally, the defendant must participate in the management or operation of the enterprise.  *Mohawk Indus.*, 465 F.3d at 1283.

However, an informal and loose association will suffice because "the Eleventh Circuit has not bound itself to strict metaphysical structural requirements."  *See In re Managed Care*, 298 F. Supp. 2d at 1275.  Likewise, "there has never been any requirement that the common purpose of the enterprise be the sole purpose of each and every member of the enterprise."  *Mohawk Indus.*, 465 F.3d at 1285-86.  However, "[s]ince 'diverse parties . . . customarily act for their own gain or benefit in commercial relationships,' a complaint founded on commercial relationships between the alleged components of the enterprise should plead facts 'dispel[ling] the notion that the different parties entered into [the alleged] agreements . . . for their own gain or benefit.'"  *In re Managed Care*, 298 F. Supp. 2d at 1274 (quoting *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 n.4 (7th Cir. 2000)).  "Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than unlawful conduct the plaintiff would ask the court to infer."  *Am. Dental Ass'n*, 605 F.3d at 1290 (internal quotation marks and citation omitted).

vehicle through which the unlawful pattern of racketeering activity is committed . .

. ."  *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259 (1994).

Defendants contend Plaintiffs do not meet the distinctness requirement

because Plaintiffs define MedImpact as a "person," and the enterprise as

consisting of MedImpact,  Struhs and Adams, which fails because there is "no

enterprise if associated-in-fact members are only [a] corporation and its

employees."  Doc. 3, at 34 (citing *Fla. Evergreen Foliage v. E.I. Dupont De

Nemours & Co.*, 336 F. Supp. 2d 1239, 1260-62 (S.D. Fla. 2004)).  Therefore,

Defendants add, "[a]s Plaintiffs have failed to allege a 'person' distinct from the

alleged 'enterprise,' § 1962(c) RICO claim must be dismissed."  Doc. 3, at 35.

Defendants correctly note that "the defendant named in a § 1962(c)

indictment must be separate and distinct from the 'enterprise' named therein." *U.S.*

*v. Goldin Industries, Inc.,* 219 F.3d 1268, 1270 (11th Cir. 2000)*.* "The distinction

between the RICO person and the RICO enterprise is necessary because the

enterprise itself can be a passive instrument or victim of the racketeering activity."

*Id.*, at 1270-71. In other words, to survive a motion to dismiss, Plaintiffs must

allege the existence of an enterprise that is not limited to MedImpact and its

employees.  In that regard, Plaintiffs contend that, "[t]he persons with respect to

these claims are the defendant MedImpact, defendant Struhs, Adams, and *others*.

24

The enterprise for each claim is an association in fact consisting of those respective persons and *others*." Doc. 1-1, at 14 ¶ 90 (emphasis added).  As for the identity of the "others," Plaintiffs allege Defendants attempted to limit access to pharmaceutical services and prescription medications in concert with certain public officials.  *Id*., at 6 ¶ 57.  Thus, Plaintiffs contend the enterprise consists of Defendants *and* certain public Alabama officials, who are not employees or agents of Defendants.  These allegations sufficiently distinguish between the "persons" and "enterprise" allegedly participating in the racketeering activity to satisfy the conduct of enterprise requirement.

(b) A Pattern of Racketeering Activity

The next requirement for a section 1962(c) violation is "a pattern of racketeering activity," which "for purposes of the RICO Act, requires at least two acts of racketeering activity.  An act of racketeering is commonly referred to as a predicate act . . . [and] is shown when a racketeer commits at least two distinct but related predicate acts."  *Mohawk Indus.*, 465 F.3d at 1283 (internal quotation marks and citation omitted).  As defined in RICO, "racketeering activity" includes, but is not limited to mail fraud and wire fraud under sections 1341 and 1343, respectively.  *See* 18 U.S.C. § 1961(1)(B).

25

Where, as here, a plaintiff alleges that the "racketeering activity"consists of "predicate acts involving fraud, those predicate acts must be pleaded with particularity, in accordance with Fed. R. Civ. P. 9(b)."[7]  *See Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1355-56 (11th Cir. 2008); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283,1291 (11th Cir. 2010) (explaining that because the plaintiffs "alleged pattern of racketeering consist[s] entirely of the predicate acts of mail and wire fraud, their substantive RICO allegations must comply not only with . . . *Twombly* and *Iqbal* but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard").  In other words, "pursuant to Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud."  *Am. Dental Ass'n*, 605 F.3d at 1291 (internal quotation marks and citation omitted). Moreover, "[t]he plaintiff must allege facts with respect to each defendant's participation in the fraud."  *Id.*

As to the racketeering activity, Plaintiffs allege predicate acts consisting of

---

[7]As predicate acts, Plaintiffs allege mail fraud, wire fraud, interference with the operation of employee benefit plans, and extortion.  See doc. 1-1, at 11 ¶ 73.

mail and wire fraud, presumably arising from Defendants' scheme to limit access
to pharmaceutical services and prescription medications.  To support their
contention, Plaintiffs claim that when they refused to execute the unlawful
pharmaceutical network agreement, Defendants sent them a copy of a letter
Defendants planned to send to Plaintiffs' customers directing the customers to
contact Defendants to obtain names of other pharmacies to use for their
prescriptions.  Doc. 1-1, at 10 ¶ ¶ 65, 84.  Plaintiffs assert further that the
correspondence contained "defendants' illegal and oppressive proposed pharmacy
network agreement, [and] the defendants' threats against the plaintiff as well as its
customers to wrongfully withhold reimbursements . . . ," *id.*, at 12 ¶ 77, and that
the unlawful contracts forced Plaintiffs and class members to choose between
forgoing reimbursement or reimbursement at improper lower rates, doc. 1-1, at 13
¶ 80.  Finally, Plaintiffs assert that Defendants transmitted their proposed
pharmacy network agreements, funds, and correspondence amongst each other in a
continuous and uninterrupted flow across state lines and "employed the United
States mail and interstate wires" in their scheme to eliminate small private
Alabama pharmacies.  *Id.*, at  ¶ 78.

Accepting Plaintiffs' facts as true, the predicate acts, i.e., mail and wire
fraud, are related in that Defendants committed both to further their unlawful

27

objective to allegedly eliminate small independent pharmacies from the participating network.  Additionally, Plaintiffs allege Defendants misrepresented reimbursement rates that were not the actual rates Alabama law required in their mandatory contracts.  Doc. 1-1, at ¶ 60.  Therefore, the court finds Plaintiffs' specific assertions meet the heightened standard required for mail and wire fraud under *Iqbal/Twombly* and Rule 9.  Accordingly, the court turns now to the parties' respective arguments regarding the section 1962(c) claim.

(c) Plaintiffs State a Claim Under § 1962(c)

Defendants attack the section 1962(c) claim three fold: (1) that Plaintiffs failed to sufficiently plead a pattern of racketeering activity because the "allegations of mail and wire fraud fail to satisfy *Twombly* and Rule 9(b) standards," doc. 3, at 19; (2) that Plaintiffs failed to sufficiently plead proximate cause, *id.*, at 30; and (3) that Plaintiffs failed to sufficiently plead an "enterprise" distinct from the "persons," *id.*, at 33.  First, as to the Rule 9(b) contention, as previously stated, to meet Rule 9(b)'s pleading standards, Plaintiffs must state (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled Plaintiffs; (4) what Defendants gained by the alleged fraud; and (5) facts with respect to each Defendant's participation in the fraud.

28

*See Am. Dental Ass'n*, 605 F.3d at 1291.  In that regard, Plaintiffs contend Defendants "engaged in a scheme to create a closed and/or limited access network to pharmacies in contravention of Alabama law . . . in an effort to control the provisions of pharmaceutical services . . . in our State," doc. 1-1, at 8 ¶ 51, and then alleged facts with respect to each Defendant's participation in the alleged scheme.  Specifically, Plaintiffs allege Struhs initiated the scheme while working at Wal-Mart and implemented it after he joined MedImpact in 2010.  Doc. 1-1, at 8 ¶ 53-54.  Moreover, allegedly, Struhs retained Adams to influence the state officials overseeing the benefits plan.  Doc. 1-1, at 8 ¶ 55.  Additionally, as part of the alleged scheme, Plaintiffs contend some Alabama officials started denying the applicability of certain insurance laws despite previously outlining their intent to honor the laws in question.  *Id.*, at ¶ 58.  These facts are sufficient to satisfy Rule 9(b) and the *Iqbal/Twombly* pleading standard.

Second, as to proximate cause, Plaintiffs alleged that Defendants' predicate acts caused them to lose money and property, the ability to provide lawful pharmaceutical services through the pharmacy-patient relationship, and the ability to provide prescription medications.  *See* Doc. 1-1 ¶¶ 73-74.  Thus, the court finds that Plaintiffs pled sufficient facts to establish proximate cause.  *See supra* section (B)(1).

29

Finally, as to the enterprise element, Plaintiffs must allege the existence of an enterprise that is not limited to MedImpact and its employees. As stated previously, Plaintiffs alleged that, "[t]he persons with respect to these claims are the defendant MedImpact, defendant Struhs, Adams, and *others*. The enterprise for each claim is an association in fact consisting of those respective persons and *others*." Doc. 1-1, at 14 ¶ 90 (emphasis added). Allegedly, the "others" are certain public Alabama officials, who are not employees or agents of Defendants. Therefore, Plaintiffs allege enough facts to satisfy the enterprise requirement. *See supra* section (B)(3)(a). Accordingly, the motion to dismiss the section 1962(c) claim is **DENIED**.

### 4. 18 U.S.C. § 1962(d)

Plaintiffs contend that Defendants conspired to violate sections 1962(a) and (c), in violation of section 1962(d). Doc. 1-1, at 10 ¶ 67. Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). "A defendant may be guilty of conspiracy even if he did not commit the substantive acts that could constitute violations of §§ 1962(a), (b), or (c)." *United States v. Browne*, 505 F.3d 1229, 1264 (11th Cir. 2007). Moreover, "what *is* required to support a claim of RICO conspiracy is that plaintiffs allege an illegal agreement to violate a

substantive provision of the RICO statute." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1269 (11th Cir. 2004) (emphasis original). Indeed, it is well established that "[a] plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 950 (11th Cir. 1997) (quoting *United States v. Church*, 955 F.2d 688, 694 (11th Cir. 1992)). "A plaintiff need not offer direct evidence of a RICO agreement; the existence of conspiracy may be inferred from the conduct of the participants." *American Dental*, 605 F.3d at 1293 (quotation marks and citation omitted). However, the circumstantial evidence must demonstrate "that each defendant necessarily must have known that the others were also conspiring to participate in the same enterprise through a pattern of racketeering activity." *Browne*, 505 F.3d at 1264. Specifically, for a conspiracy to violate section 1962(c), "a plaintiff must demonstrate that a defendant 'objectively manifested, through words or actions, an agreement to participate in the conduct of the affairs of the enterprise' through a pattern of racketeering activity." *Liquidation Com'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1353 (11th Cir. 2008) (quoting *United States v. Starrett*, 55 F.3d 1525, 1543 (11th Cir. 1995)).

31

Defendants contend Plaintiffs' RICO conspiracy claim fails because "(1) it does not meet the *Twombly/Iqbal* standard and (2) Plaintiffs' other RICO claims fail, and because their conspiracy claim offers no factual allegations beyond those supporting the other RICO claims, their conspiracy claims also fails."  Doc. 3, at 37.  The court agrees that Plaintiffs fail to sufficiently plead a conspiracy to violate section 1962(a), which requires reinvestment of racketeering proceeds into an enterprise apart from the enterprise conducting the racketeering activity.  Plaintiffs have not alleged facts indicating such reinvestment or any agreement to undertake such conduct.  *See supra* section B(2).  Thus, to the extent Plaintiffs allege a conspiracy under section 1962(d) to violate section 1962(a), the motion to dismiss is **GRANTED**.

However, Plaintiffs have outlined sufficient facts, at this stage in the litigation, to infer the existence of an agreement between Defendants and some Alabama officials to violate section 1962(c).  Specifically, Plaintiffs allege "[D]efendants' actions in concert with certain public officials to ignore the [insurance] statutes were essential to the defendants' efforts to limit access to pharmaceutical services and prescription medications."  Doc. 1-1, at 9 ¶ 57.  To further the scheme, allegedly certain Alabama officials denied the applicability of Alabama's insurance laws, such as the "any willing provider" statute, even though

32

these officials purportedly previously expressed in writing that they would honor the statute.  *Id.*, at 9 ¶ 58.  Moreover, allegedly, "[e]ach defendant and some or all of the co-conspirators also agreed to the operation of the scheme or artifice to defraud and to obtain money by false pretenses and to the scheme or artifice to deprive the plaintiffs and members of the class of the right to deliver pharmaceutical services for profit within the State of Alabama."  *Id.,* at ¶ 71.

These allegations are sufficient for the court to infer that Defendants purportedly conspired with some Alabama officials to participate in the racketeering activity.  Whether Plaintiffs can ultimately prevail on this claim is a separate issue and one whose determination is not an issue at this juncture.  Rather, the relevant inquiry now is simply whether Plaintiffs have pled a plausible claim.  Because Plaintiffs have done so, the motion to dismiss the section 1962(d) claim premised on an alleged conspiracy to violate section 1962(c) is **DENIED**.

5. *18 U.S.C. § 1951(b)(2)*

Plaintiffs also allege a violation of section 1951(b)(2), which prohibits extortion.  "The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).  Allegedly, "defendants unlawfully attempted to and/or induced numerous pharmacies to part

33

with property interests to which the defendants were not unlawfully entitled.

These interests included the right of pharmacies to receive usual and customary

rates of reimbursements and to serve PEEHIP beneficiaries under the plan."  Doc.

1-1, at 13 ¶ 82.

Defendants contend dismissal is warranted because Plaintiffs fail to

sufficiently plead that Defendants "obtained" anything from them.  Doc. 3, at 26.

Defendants rely on *Scheidler v. National Organization for Women*, 537 U.S. 393

(2003), a case in which plaintiffs filed a RICO extortion claim against abortion

protesters, claiming the protesters conspired to shut down abortion clinics.  The

Court rejected the claim finding that the defendants did not "obtain" or attempt to

"obtain" any property from the plaintiffs:

> But even when their acts of interference and disruption achieved their
> ultimate goal of "shutting down" a clinic that performed abortions,
> such acts did not constitute extortion because petitioners did not
> "obtain" respondents' property . . . . Petitioners neither pursued nor
> received "something of value from" respondents that they could
> exercise, transfer, or sell. To conclude that such actions constituted
> extortion would effectively discard the statutory requirement that
> property must be obtained from another . . . .

*Scheidler*, 537 U.S. at 405.

Unlike *Scheidler*, Plaintiffs sufficiently plead that Defendants "obtained"

something of value from them.  Allegedly, "in accordance with the defendants'

unlawful plan and/or scheme, the proposed pharmacy network treats independent pharmacies inequitably and unfairly and operates to the exclusive benefit of the desired large chains."  Doc. 1-1, at 9 ¶ 62.  Significantly, Plaintiffs claim that "defendants either knew or recklessly disregarded that the natural consequences of their actions . . . continues . . . to interfere with and secure property rights to which they are not entitled."  *Id.*, at 13 ¶ 83.  In other words, Plaintiffs allege that Defendants obtained something of value from them, i.e., the right to participate in the pharmacy network at the same reimbursement rates as larger chains.  Moreover, Plaintiffs allege also that Defendants are refusing to provide them usual and customary reimbursement rates and by affirmatively placing conditions upon Plaintiffs that would prevent them from customer relationships with non-covered beneficiaries.  *Id.*, at 6-7 ¶ 35.  In light of these allegations, the court finds that Plaintiffs sufficiently plead an extortion claim under section 1951(b)(2), and **DENIES** the motion to dismiss this claim.

6. *18 U.S.C. § 1952(a)*

Plaintiffs also allege Defendants violated section 1952(a), which prohibits the use of interstate commerce or the mail for unlawful activity.  Doc. 1-1, at 14 ¶ 86.  Specifically, Plaintiffs contend "[d]uring the relevant times herein alleged, and in furtherance of and for the purpose of executing . . . their illegal scheme . . .

35

defendants traveled and/or used the mail in interstate commerce in order to carry out their plan, distribute proceeds of their plan, and/or facilitate their unlawful activity." *Id.*  Defendants assert that Plaintiffs provide only a "formulaic restatement of the statute itself" and failed to properly plead a section 1952 violation.  Doc. 3, at 28.  Defendants contend further that dismissal is warranted because Plaintiffs failed to allege any of "the 'unlawful activity' referred to in § 1952(a) . . . [i.e.] gambling, liquor, narcotics, prostitution, extortion, bribery, arson" or, alternatively, "do not do so meeting *Twombly/Iqbal* standards . . . ." *Id.*, at 29.

The court disagrees because Plaintiffs allege extortion as a predicate act. Moreover, in light of the court's finding that Plaintiffs sufficiently plead their extortion claim, *see supra* at section (B)(5), the court finds that Plaintiffs have alleged enough facts to satisfy the pleading requirements necessary for a section 1952 claim.  Therefore, the motion to dismiss the section 1952 claim is **DENIED**.

**C.   Plaintiffs State a Claim for Violation of Alabama's Antitrust Laws – Count VI**

Finally, Defendants challenge the Alabama antitrust violations claim.  It is well settled that "[t]he federal law relating to monopolization governs Alabama antitrust actions."  *McCluney v. Zap Prof'l Photography, Inc.,* 663 So. 2d 922, 926

(Ala.1995) (internal quotations omitted) (citing *Ex parte Rice,* 259 Ala. 570, 67 So. 2d 825 (1953)).  The Alabama Supreme Court has stated, "the field of operation of Alabama's antitrust statutes, specifically § 6-5-60, . . . . regulate monopolistic activities that occur 'within this state'-within the geographic boundaries of this state-even if such activities fall within the scope of the Commerce Clause of the Constitution of the United States."  *Abbot Labs. v. Durrett*, 746 So. 2d 316, 339 (Ala. 1999).

The defendant may raise the state-action-immunity doctrine as a defense to a violation of state antitrust laws. *Vandenberg v. Aramark Educational Services, Inc*., 2011 WL 4507358, *7 (Ala. 2011).  Accordingly, a municipality is entitled to state action immunity if it acted pursuant to "clearly articulated and affirmatively expressed state policy."  *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 46-47 (1985); *City of Lafayette, La. v. Louisiana Power & Light Co.,* 435 U.S. 389, 410 (1978).  However, "[p]rivate parties are entitled to even less federal deference than either the State or its political subdivisions.  When a private party seeks the protection of state action immunity, it must show both that: (1) the challenged restraint was clearly articulated and affirmatively expressed as state policy; and (2) the policy was actively supervised by the state." *Crosby v. Hosp. Auth. of Valdosta and Lowndes County,*  93 F.3d 1515, 1521-22 (11th Cir. 1996) (internal

citations omitted).

Here, Plaintiffs contend Defendants violated Alabama Code sections 6-5-60 and 8-10-1, et seq., which "prohibit[] persons and/or corporations from acting, agreeing, engaging, operating, and/or combining to fix or limit the quantity of any article or commodity sold within the State of Alabama." Doc. 1-1, at 15 ¶ 94. Plaintiffs contend that, as it relates to pharmacies operating within Alabama and who retail to Alabama citizens, Defendants "created, devised, and implemented a plan and/or scheme to limit the provision of pharmaceutical services and prescription medicine within the State of Alabama." *Id.*, at 15 ¶ 95.

Defendants deny Plaintiffs' contentions and assert that the court should dismiss the antitrust claim for two reasons. First, Defendants contend that Alabama's antitrust statute does not apply to interstate commerce. Doc. 3, at 43. Specifically, Defendants maintain MedImpact is a California corporation, that Struhs is a resident of California, and that the contracts at issue involve transactions conducted across state lines. Doc. 3, at 47. Unfortunately for Defendants, Plaintiffs are alleging only "actual trade restraint . . . within the borders of Alabama." Doc. 1-1, at 15 ¶ 96. Accepting Plaintiffs' allegations as true, Defendants' alleged scheme involved only the retail provision of prescription medication within Alabama by pharmacies operating in Alabama and to citizens of

Alabama.  Doc. 1-1, at 15.  As such, that MedImpact and Struhs are foreign residents or the contracts involve interstate transactions is irrelevant because the "[Alabama] statutes regulate monopolistic activities that occur 'within this state' . . . even if such activities fall within the scope of the Commerce Clause of the Constitution of the United States." *Abbot Labs.*,  746 So. 2d at 339.  Therefore, because the alleged acts occurred within the "geographic boundaries" of Alabama, they are activities within the scope of Alabama's antitrust statutes.

Second, Defendants contend that MedImpact is immune under the state-action doctrine.  Doc. 3, at 43.  Specifically, Defendants contend the PEEHIP Board is a state-actor and that because MedImpact's "conduct was embodied in a contract between it and the PEEHIP Board, these state-action immunity principles are extended to MedImpact." *Id.*, at 44.  Plaintiffs counter that the state action doctrine is "only applicable to Federal antitrust laws." Doc. 7, at 22.  Plaintiffs are incorrect because the Alabama Supreme Court has held that "[t]he state-action immunity doctrine also has a logical basis that is as relevant to state antitrust claims as it is to federal antitrust claims." *Vandenberg,* 2011 WL 4507358 at *6. Therefore, "[t]he state action immunity doctrine may be raised as a defense to claims that state antitrust laws have been violated." *Id.*

Further inquiry is, however, necessary to determine if Defendants are in fact

immune.  It is undisputed that "a private party acting in conjunction with the state might be entitled to state-action-immunity protection if the private party is acting pursuant to a clearly articulated and affirmatively expressed state policy." *Id.* Consequently, Defendants assert that the state-action immunity principles extend to MedImpact because its conduct was embodied in a contract it had with the state actor PEEHIP Board.  Doc. 3, at 44.  Furthermore, Defendants state that "[w]hen a plaintiff challenges conduct embodied in a contract between an immune state actor (such as PEEHIP Board) and a private actor (such as MedImpact), courts have routinely extended state-actor immunity to the private action."  *Id.*, at 46.

Defendants overlook though that Plaintiffs are not challenging the conduct embodied in the contract between the PEEHIP Board and MedImpact.  Rather, Plaintiffs contend Defendants breached their duties to Plaintiffs by failing to abide by the provisions of MedImpact's agreements with Alabama (the PEEHIP Board). *See* doc. 1-1, at 5 ¶ 34-35.  Moreover, Plaintiffs allege further that "Defendants created, devised, and implemented, a plan to limit the provision of pharmaceutical services and prescription medications within the State of Alabama," doc. 1-1, at 15, in violation of clearly articulated state policies under sections 6-5-60 and 8-10-1.  Therefore, accepting the allegations as true, immunity will not automatically flow to MedImpact if, in fact, the anti-competitive actions it allegedly committed

40

were not done pursuant to a contract with PEEHIP.  In such a case, Defendants will not be able to show that "the challenged restraint [here] was clearly articulated and affirmatively expressed as state policy  . . . [or that] the policy was actively supervised by the state."  *See Crosby*, 93 F.3d at 1521-22.  This determination is premature at this juncture since the parties have not conducted any discovery.  Accordingly, no basis exists yet at this juncture for state-action immunity.  Therefore, the motion to dismiss the state antitrust claim is **DENIED.**

## IV. CONCLUSION

For the reasons set forth above, the motion to dismiss is **GRANTED** in part and **DENIED** in part.  Specifically, Plaintiffs' section 1962(a) claim and the section 1962(d) claim premised on a conspiracy to violate section 1962(a) are dismissed for failure to state a claim.  In all other respects, the motion is **DENIED**.

**DONE** this 27th day of March, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE